## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HUI G. CHEN** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-5808** |
| **OCHSNER CLINIC FOUNDATION AND OCHSNER CLINIC, A PROFESSIONAL CORPORATION** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #24) is **GRANTED** as to plaintiff's claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; Louisiana Revised Statutes § 23:301, et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; and, La. Rev. Stat. § 23:322, et seq., and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's claim brought under La. Rev. Stat. § 23:1361 and his claim for intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants, Ochsner Clinic Foundation and Ochsner Clinic, a Professional Corporation (collectively "Ochsner").

Plaintiff, Hui G. Chen, alleges that he began working for Ochsner as an electrician at Ochsner's Brent House Hotel.  In April 1994, he was transferred to one of Ochsner's hospitals and worked on the TeleLift system, which carried documents and other items behind walls and above the ceilings throughout the hospital.  In late 2005, the hospital became "paperless" and began eliminating the TeleLift System.  Thereafter, Chen was reassigned to work on the tube system,

which carries medicine, patient test specimens, blood and other items to various places in the hospital.

Chen alleges that in July 2011, he received five incident reports from Mike Lawson that stated he had low evaluation scores from 2010.  Chen claims that this was "in an attempt to intimidate and terminate [him] because Gary (white) and Eric (white) wanted to get rid of the foreigner and replace him with a white guy after 17 years of service."

Chen also alleges that he sprained his ankle at work on September 14, 2011, "while repairing a pipe in the ceiling," after asking for a helper and having the request denied by his supervisors.  Chen claims that he was treated in the hospital's emergency room, and then participated in physical therapy.  Chen alleges that he used two weeks of general purpose time, and then was on short-term disability until November 16, 2011.  Chen made a workers' compensation claim regarding the incident, and claims that thereafter, he was retaliated against, harassed and eventually terminated on April 19, 2012.

On September 11, 2013, Chen filed this lawsuit in which he alleges that after his September 14, 2011, injury and subsequent workers' compensation claim, his co-workers and supervisors discriminated against him, and that he was ultimately terminated.  Specifically, he alleges that "[a]fter his return, Plaintiff was subjected to systematic and intentional discrimination in direct retaliation and reprisal for having brought a claim of workers' compensation."  Chen also alleges that he "was subjected to intentional race and national origin discrimination and suffered a severe and pervasive hostile work environment," and that when he complained of the alleged retaliation and harassment Ochsner did not take any action "to prevent and correct promptly the harassment and retaliation."  Further, Chen alleges that he was "terminated in retaliation for his disability, race and

his complaints of discrimination engaging in protected activity[, and] [t]he retaliatory and discriminatory retaliation is tangible employment action against [him.]"

Chen brought claims for race and national origin discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and the corresponding Louisiana law, La. Rev. Stat. § 23:301, et seq.; under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the corresponding Louisiana law, La. Rev. Stat. § 23:322, et seq.; for discrimination with respect to his workers' compensation claim under La. Rev. Stat. § 23:1361; under the Louisiana Whistleblower Statute, La. Rev. Stat. 23:967; under the Louisiana's Final Paycheck Statute, La. Rev. Stat. § 23:632; and for intentional infliction of emotional distress and negligence under Louisiana tort law.  On Ochsner's motion, this court dismissed Chen's claim for negligence, and his claims under Louisiana's Final Paycheck Statute and Whistleblower Statute, La. Rev. Stat.  §§ 23:632 and 23:967, respectively.  Ochsner now moves for summary judgment on Chen's remaining claims.

## ANALYSIS

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  In determining whether there is a dispute as to a

material fact, the court considers all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party, but does not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S.Ct. 2097, 2110 (2000).

**B.      Title VII and La. Rev. Stat. § 23:301, <u>et</u> <u>seq.</u>**

Ochsner argues that it is entitled to summary judgment on Chen's national origin and race discrimination, hostile work environment and retaliation claims brought under Title VII and Louisiana's Employment Discrimination Law.[1]

Title VII provides that it is  "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  La. Rev. Stat. § 23:332, similarly provides that it is unlawful employment discrimination for an employer to "[i]ntentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. LA. REV. STAT. § 23:332(A)(1).  Because the laws are substantively similar,  jurisprudence

---

[1] Ochsner does not specifically address Chen's similar claims brought under 42 U.S.C. § 1981. Pursuant to § 1981, all persons within the jurisdiction of the United States have the same rights, regardless of race, to enter into and enforce contracts, including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a)-(b).  Section 1981 claims and Title VII claims are analyzed under the same methodology.  <u>Jenkins v. Methodist Hosp. of Dall., Inc.</u>, 478 F.3d 255, 260 (5th Cir. 2007); <u>see also</u> <u>Jones v. Robinson Prop. Grp., L.P.</u>, 427 F.3d 987, 992 (5th Cir. 2005) ([T]he only substantive differences between the two statutes [is] their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.").  Thus, this court's analysis of Chen's Title VII claims also applies to his § 1981 claims.

4

interpreting Title VII can be applied in interpreting the Louisiana employment discrimination laws, La. Rev. Stat. § 23:301, et seq.. Brittain v. Family Servs., Inc., 801 So.2d 457 (La. Ct. App. 2001).

A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove his case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)." Id.

In McDonnell Douglas, the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746 (1993). First, the plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the employee. Tex. Dep't of Cmty. Affirs v. Burdine, 101 S.Ct. 1089, 1094 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. Buisson v. Bd. of Supervisors of the La. Cmty. and Technical Coll. Sys., - - - Fed. Appx. - - - , 2014 WL 5804127, at *4 (5th Cir. 11/10/2014) (citing McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)). "If the employer articulates a legitimate reason for the adverse employment action, 'the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose.'" Id. (quoting McCoy, 492 F.3d at 556).

### 1.   National Origin or Race Discrimination

To establish a prima facie case of discrimination the plaintiff must demonstrate that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action, such as termination of his employment; and, (4) was replaced with someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. Id. (citing McCoy, 492 F.3d at 556).

Chen satisfies the first three prongs.  As an Asian-American originally from China, Chen has demonstrated that he was a member of a protected group.  There is no dispute that he was qualified for his position at Ochsner, and he has alleged an adverse employment action in that he was terminated from his employment.[2]

Chen has not satisfied the fourth prong, because he has not shown that he was replaced with someone outside his protected group or that he was treated less favorably than other similarly situated employees outside the protected group.  Chen alleges that July 2011, he received five incident reports from Mike Lawson that stated he had low evaluation scores from 2010, and that this was "in an attempt to intimidate and terminate [him] because Gary (white) and Eric (white) wanted to get rid of the foreigner and replace him with a white guy after 17 years of service."  However, Chen does not identify any evidence in his opposition to Ocshner's motion for summary judgment, either by affidavit or argument in his memorandum, that he was actually replaced by someone outside of his protected group when he was terminated in April 2012. See Forsyth v. Barr, 19 F.3d

---

[2] Chen mentions poor performance evaluations.  However, poor performance evaluations are not adverse employment actions.  Buisson, 2014 WL 5804127, at *5 (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (noting that an adverse employment actions "consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, [demoting,] and compensating" and must "affect job duties, compensation, or benefits")).

1527, 1537 (5th Cir. 1994) (To satisfy his burden on a motion for summary judgment, the nonmovant is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] his claim."); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]").

Further, Chen has not proved that he was treated less favorably than other similarly situated employees outside the protected group. Ochsner presented the following evidence regarding Chen's performance evaluation and discipline record to demonstrate that Chen was terminated for cause, not due to discrimination:

- In 2003, Chen received a "meets expectations/good" score on his annual performance evaluation, but initially refused to sign it because he thought he should have received a higher score. The evaluation also noted that "Chen occasionally fails to listen without interrupting and maintaining a professional tone with Management and his peers."

- In 2008 and 2009, Chen's supervisor, Nicholas Sciambra, stated in Chen's performance evaluations that Chen needed to continue to develop his skills in working with the tube system.

- In 2010, Sciambra rated Chen as "Exceeds Expectations" in his performance evaluation but noted that:

  > In the last 12 months Chen has had some problems with trouble shooting different types of break downs on the tube system. When Chen has a problem that he cannot resolve, he seems to lose his confidence and wants to rely on other co-workers for help . . .

  > Chen needs to continue to develop his skills on the tube system . . .

  > Chen continues to do a good job on the tube system. He displays job ownership. Chen does demonstrate some trouble shooting problems . . . .

  > Chen does not understand the flow of trouble shooting the tube system. He spends too much time documenting on the computer instead of trouble shooting issues in the field.

7

- Chen initially refused to sign this evaluation because he was "unhappy with some comments that were listed."  When Chen met with Sciambra to discuss the evaluation, he told Sciambra that he would "hate him" if Sciambra did not change the evaluation.

- In 2011, Gary Jallans, Chen's new supervisor, gave Chen an "Achieves Expectations" score on his 2011 evaluation, but noted that:

  > Chen has made a good effort in keeping the tube system running and has been consistent in working on the daily maintenance of it.  He has stayed late and been here on weekends to try to keep the system up and running.  On the other hand, there have been some times over the past year that Chen has had some problems trouble shooting the tube system.  This has led to bringing in addition[al] help to resolve the problems.

- That evaluation also stated that Chen was required to take an additional training course from the tube system manufacturer, and that Chen "[o]ccassionally fails to be effective and remain professional in stressful situations."

- On July 15, 2011, Jallans and Sciambra met with Chen to discuss the evaluation.  Chen was upset by the evaluation, and had to report to employee health due to his anger.  The meeting was rescheduled for July 18, 2011, and Allison Atkinson from human resources attended.

- At the July 18, 2011, meeting, Chen was upset by the "Achieves Expectations" score, and refused to sign the evaluation.  Michael Lawson, the Facilities Director, stated in an email to Atkinson that Chen's "Achieves Expectations" score could have been lowered because of his behavior, but instead added requirements of training for accepting feedback, communication, stress management, and monthly meetings regarding those items.

- On July 20, 2011, Chen met with Atkinson to draft a rebuttal to his evaluation, and he stated that he was "proud of doing a perfect job."  Chen also submitted suggested scores of "Exceeded Expectations" or "Outstanding."

- On July 25, 2011, Chen, Jallans, Atkinson, Lawson, and Sciambra attended another meeting to review Chen's 2011 evaluation and his response.  Chen's evaluation scores were not changed, and he complained to Lawson about the scores again on August 17, 2011.

- When Chen injured his ankle on September 14, 2011, he was the only employee responsible for the tube system at that time, so Eric Danos took over the tube maintenance in Chen's absence.  Danos discovered that Ochsner was short 89 tubes and that another 42 were cracked, and he inspected every tube station daily.

- Lawson, along with human resources personnel, devised a plan to discuss the tube system issues with Chen upon his return, and developed a "Monthly Tube System Report."  Lawson discussed these items with Chen when he returned to work on November 16, 2011.  Chen denied that the problems existed, continued to refuse to sign his 2011 evaluation learning map, and refused to attend the advanced tube system training.

- Ochsner's Vice President of Facilities, James Britsch, explained to Chen that the training was required, and Chen agreed to go in March 2012.

- On December 1, 2011, Jallans explained to Atkinson that Chen consistently took too long to diagnose problems with the tube system, and on December 5, 2011, Chen received a corrective action form that outlined the deficiencies with his performance since November 21, 2011, such as excessive down time of the tube system and Chen's failure to close a tube system doorway in a common hallway.  Chen refused to sign the document, and appealed the corrective action.

- Thereafter, Chen received another corrective action form for allegedly refusing to follow Jallan's instructions regarding a computer issue.  On December 14, 2011, Chen attended a meeting with Lawson, Jallans and Atkison to discuss that issue.  He told Jallans "[y]ou want to fire me, catch me," and asked Jallans if he went to church.  Chen appealed this corrective action.

- In a December 15, 2011, email to Atkinson and Britsch, Lawson stated that his "five month review of Chen's job performance notes he is consistently defiant to facilities management supervision.  He is not receptive to constructive instruction for improvement.  He has demonstrated poor troubleshooting skills related to working on the tube system, which has resulted in extensive downtime of the system."

- On January 9, 2011, Britsch drafted a memorandum denying Chen's appeal requesting that the December 5, 2011, corrective action be withdrawn. It stated that Chen's "willingness to be open and listen appropriately to feedback and direction from your supervisor is an area that continues to need improvement."  Atkinson gave this document to Chen on January 11, 2012.

- On February 13, 2013, William Ward, Senior Vice President of Facilities, issued a denial of Chen's appeal of the December 15, 2011, corrective action.  In that document, Ward noted that the "investigation found that [Chen's] manager provided [him] with clear direction of the steps needed to be taken to resolve the shutdown and that your failure to follow said instructions resulted in unnecessary downtime."

- On April 12, 2012, Lawson submitted Chen's 2012 performance evaluation to Atkinson for review.  The document indicated that Chen would receive an "Improvement Expected" score because he demonstrated disruptive behavior "boarding on

9

insubordination," and did not "have the willingness to accept constructive feedback from leadership regarding his performance."  It also mentioned the December 2011 corrective actions, and noted that he showed some improvement on the technical side but was not receptive to performing daily tube station checks.  It required Chen to review his communication skills and learn to accept and trust leadership decisions.

- Chen submitted a self-evaluation to Lawson on April 18, 2012, before Lawson and Jallans reviewed the 2012 evaluation with Chen.  Chen rated himself as "Exceeds Expectations."  As a result, Lawson decided that Chen was not improving and did not comprehend how Ochsner was trying to help him improve.  Thus, Lawson, along with Britsch, human resources personnel, and other senior leadership at Ochsner decided to terminate Chen.

Chen argues that all of the poor evaluations and corrective actions were motivated by a racial or national origin animus.  He also claims that the affidavit of Quang Nguyen, a former Ocshner employee of Asian decent who was fired, and arguments regarding a white employee named Bill who allegedly hurt his foot and was given light duty, demonstrates that Asians were treated less favorably.  Although Nguyen was terminated and believed that he was discriminated against, Chen does not identify any evidence that proves that a non-Asian, non-Chinese person with a similar performance evaluation and discipline record as his was retained whereas he was terminated.  Thus, he has not demonstrated that he was treated less favorably than a similarly situated employee outside the protected group, and does not satisfy the fourth prong of the prima facie case of race or national origin discrimination, and Ochsner's motion for summary judgment is GRANTED as to Chen's race and national origin discrimination claims brought under Title VII, § 1981, and La. Rev. Stat. § 23:301, et seq., which are DISMISSED WITH PREJUDICE.

### 2.  Hostile Work Environment

Chen claims that he was subjected to a hostile work environment due to his race and national origin.  He claims that the following events demonstrate a hostile work environment:

- In 2005, someone urinated in his work room.

10

- Sciambra put a note on his door that stated, "If door is locked, do not knock on my door," which was meant only for Chen.

- In 2008, when he went to China to visit his mother, Scaimbra told Chen that he would be fired if Sciambra saw him on television at the Olympic Games.

- Sciambra and other employees would say profane words in their offices, but stop when Chen entered.

- Sciambra called Chen a rat.

- Jallans passed gas in Chen's work area before he became Chen's supervisor.

- In July 2011, someone put some type of grease substance on Chen's telephone.

- A light in the tube room fell to the ground.

- Someone moved the telephone in Chen's work station to the middle of the tube system room.

- Someone placed some type of substance on Chen's chair.

- Someone placed pieces of scrambled egg in Chen's desk drawer.

- The sign labeling the tube office was removed and replaced with a sign that said "Keith and Steve's Office."

To establish a hostile work environment claim based on race or national origin under Title VII, a plaintiff must prove: (1) membership in a protected group; (2) unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Buisson, 2014 WL 5804127, at *6 (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).

Chen satisfies the first two prongs of the test. As an Asian-American of Chinese national origin, plaintiff was part of a protected group, and he has pointed to instances of harassment that were unwelcome. However, Chen does not establish that the harassment was based on his race or

11

national origin.  Chen admitted that he never heard any supervisor or manager make any negative or discriminatory comments about Chinese or Asian people.  Further, there is nothing overtly racist about the cited instances.

Moreover, Chen cannot satisfy the fourth element.  To satisfy the fourth requirement, that the harassment affected a term, condition or privilege of employment, it must be both objectively and subjectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283 (1998) (citations omitted).  The Supreme Court of the United States has stated that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (citations omitted).  "To determine whether conduct is objectively abusive, we look to the totality of the circumstances: the frequency of the discriminatory conduct, its severity, whether it involves physical threats or humiliation as opposed to mere offensive utterances, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermines the plaintiff's workplace competence." Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio, 560 Fed. Appx. 328, 332 (5th Cir. 2014).  The instances Chen cites do not rise to the level of severity or pervasiveness necessary to support a hostile work environment claim.  None of the instances involved physically threatening conduct, nor did they unreasonably interfere with Chen's performance.  Sciambra's comment about not seeing Chen at the 2008 Olympic Games while he was in China and the egg yoke, which Chen claims were race related, were one-time occurrences that are insufficient to establish a hostile work environment based on race or national origin. See Buisson, 2014 WL 5804127, at *7 (A supervisor's use of a derogatory term to refer to an Asian-

American subordinate was insufficient to establish a hostile work environment even when combined with the supervisor's other offensive and annoying behavior).  Moreover, after the July 2011 incident when someone allegedly put a grease substance on Chen's phone, Lawson called a meeting with the facilities department to review the harassment policy, explaining that practical jokes would not be tolerated and giving copies of the policy to the employees at the meeting.  Thus, Ocshner's motion for summary judgment is GRANTED as to Chen's hostile work environment claims brought under Title VII, § 1981, and La. Rev. Stat. § 23:301, et seq., which are DISMISSED WITH PREJUDICE.

### 3.  Retaliation

Chen alleges that he was retaliated against under Title VII for complaining about discrimination.

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [Title VII]."  To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and, (3) there is a causal connection between the protected activity and the adverse action. Buisson, 2014 WL 5804127, at *7 (citing Stewart v. Miss. Trans. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).

Chen claims that he was fired for complaining about racial and national origin discrimination, however, he cannot establish a casual connection between the complaints and the adverse employment action.  In the January 9, 2012, denial of Chen's appeal of the December 5, 2011, corrective action, Britsch notes that Chen alleged that he was being discriminated against due

13

to his skin color.  Chen also made this allegation at a January 11, 2012, meeting with Atkinson.

Atkinson testified at her deposition that Chen could not provide any evidence to support the

allegations.  Atkinson asked another human resources employee, Karen Judlin, to investigate the

matter.  Judlin interviewed Chen, Lawson and Jallans, and was unable to substantiate Chen's claims.

Moreover, as explained above, Ochsner has demonstrated that Chen's employment record is replete

with instances of Chen's poor performance and insubordination.  Chen has pointed to nothing more

than his unsupported allegations that his termination was based on his complaints of discrimination.

Therefore, Ochsner's motion for summary judgment is GRANTED as to Chen's retaliation claims

brought under Title VII, § 1981, and La. Rev. Stat. § 23:301, et seq., which are DISMISSED WITH

PREJUDICE.

**B.      Americans with Disabilities Act and La. Rev. Stat. § 23:322, et seq.**

Chen alleges that he was discriminated against due to a disability in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the corresponding

Louisiana law, La. Rev. Stat. § 23:322, et seq..

The ADA prohibits an employer from discriminating "against a qualified individual on the

bases of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a).  A "qualified individual" is someone "who, with or without

reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires. Id. at § 12111(8).

Under the ADA, as amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L.No.

110-325, 122 Stat. 3553, the "term 'disability' means, with respect to an individual - - (A) a physical

or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. . ." Id. at § 12102(1).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. at § 12102(2)(A).  "An individual meets the requirement of 'being regarding as having such an impairment' if the individual establishes that he or she has been subjected to an action prhibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. at § 12102(3)(A).  However, a "regarded as claim" under § 12102(1)(C) cannot be based on "impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less." Id. at § 12102(3)(B).

Although the ADAAA "makes it easier to prove a disability, it does not absolve a party from proving one." Neely v. PSEG Tex., Ltd. P'ship, 735 F.3d 242, 245 (5th Cir. 2013).  When the plaintiff seeks to prove his ADA claim with circumstantial evidence, the McDonnell Douglas, Title VII burden-shifting analysis applies. McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000).  Thus, the plaintiff must first establish a prima facie case of disability discrimination by demonstrating that: (1) he is disabled or regard as being disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and, (4) he was replaced by or treated less favorably than non-disabled employees. Id. at 279-80.  If the plaintiff satisfies the prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id.  Thereafter, the burden shifts back to

15

"the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Id.

La. Rev. Stat. § 23:323, which prohibits employers from discriminating against "qualified disabled persons, on the basis of a disability," is substantially similar to the ADA.  It defines a "[d]isabled person" as "any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such impairment, or is regarded as having such an impairment." LA. REV. STAT. § 23:322(3).  Although some courts have applied the McDonnell Douglas burden-shifting analysis to claims made under the Louisiana law, in Bell v. Hercules Liftboat Co., L.L.C., 524 Fed. Appx. 64, 67 n. 10 (5th Cir. 2013), the United States Court of Appeals for the Fifth Circuit stated that it is not clear that Louisiana courts apply the McDonnel Douglas analysis to state-law disability discrimination claims.  However, the court stated that a plaintiff bringing a claim for disability discrimination under Louisiana law must demonstrate that he was: (1) "disabled" as defined by the Louisiana statute; and, (2) "otherwise qualified" at the time of the complained-of employment action. Id. at 67.

Chen has not established that he was disabled.  Chen alleged in his complaint that he sprained his ankle on September 14, 2011, and that he returned to work on November 16, 2011, after recuperating from the injury.  Chen does not allege in his complaint that he had any disability that limited a major life function when he returned to work.  He testified at his deposition that his ankle was "unstable," but that when he returned to work, he could walk and do his job.  Further, Chen's medical record dated November 14, 2011, states that "he has minimal discomfort.  There is no swelling.  There is no discoloration.  He has full active range of motion.  There is no instability about the joint." The medical provider recommended that Chen "[r]eturn to work without restrictions

16

on 11/16/2011."  Chen's December 6, 2011, medical record states that he complained of "a little discomfort with lateral movement and also sometimes when climbing a ladder," and that he asked to go back to physical therapy.  That note also states that, although there was some tenderness over the anterior talofibular ligament, there was "no gross instability about the joint," and his "range of motion is excellent."  The medical provider noted that he would request additional physical therapy sessions from the workers' compensation provider, but "continue to allow [Chen] to work without restriction."  Similarly, Chen's medical record dated February 22, 2012, states that Chen complained that he was having trouble with his ankle if he tried to work for more than 30 or 40 minutes, but upon examination, Chen has a full range of motion, no instability about the joint, and no excessive tenderness.  The provider recommended a work status summary, but Chen felt "that he [was] able to return to work without restriction at this time."

Chen claims that the approval of his October 3, 2012, application to the Louisiana Office of Motor Vehicles for a temporary mobility impaired hang-tag evidences his disability while he worked at Ocshner from November 2011 to April 2012.  However, this application was made a year after the initial injury and almost a year after Chen returned to work without restrictions.  Thus, it is not evidence that he was disabled when he returned to worked at Ochsner.  Therefore, Ochsner's motion for summary judgment is GRANTED as to Chen's claims under the ADA and La. Rev. Stat. § 23:322, et seq., which are DISMISSED WITH PREJUDICE.

**C.      Retaliatory Discharge Due to Workers' Compensation Claim under La. Rev. Stat. § 23:1361 and Intentional Infliction of Emotional Distress**

Ochsner argues that Chen's claim under La. Rev. Stat. § 23:1361 for retaliatory discharge due to his making workers' compensation claim and his intentional infliction of emotional distress claim are prescribed because they were filed more than one year after his termination. Chen argues

17

that these claims are not prescribed because they were included in his state-court lawsuit against Ocshner filed in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana on April 10, 2013, which was within one year of his April 19, 2012, termination.  Because the federal question claims over which this court had original subject matter jurisdiction under 28 U.S.C. § 1331 have been dismissed, the court declines to exercise supplemental jurisdiciton over these specific state law claims that Chen has informed the court are pending in a first-filed state court action.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").[3]  Thus, Chen's claim under La. Rev. Stat. § 23:1361 and his claim for intentional infliction of emotional distress are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. #24) is **GRANTED** as to plaintiff's claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; La. Rev. Stat. § 23:301, et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; and, La. Rev. Stat. § 23:322, et seq., and those claims are **DISMISSED WITH PREJUDICE**..

**IT IS FURTHER ORDERED** that plaintiff's claim brought under La. Rev. Stat. § 23:1361 and his claim for intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE**.

---

[3] The court exercised its supplemental jurisdiction over Chen's claims under La. Rev. Stat. § 23:301, et seq. for national origin and race discrimination, hostile work environment and retaliation; and, La. Rev. Stat. § 23:322, et seq., because those claims were substantially related to the claims arising under federal law.

New Orleans, Louisiana, this  2nd  day of December, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**